SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
A Limited Liability Partnership
Including Professional Corporations
PETER H. KLEE, Cal. Bar No. 111707
pklee@sheppardmullin.com
SUZANNE Y. BADAWI, Cal. Bar No. 194692
333 South Hope Street, 43rd Floor
Los Angeles, California 90071-1422
Telephone: 213.620.1780
Facsimile: 213.620.1398
Email: sbadawi@sheppardmullin.com

Attorneys for Defendant
ALLSTATE INSURANCE COMPANY

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION**

YVONNE APELIAN, an individual,

Plaintiff,

v.

ALLSTATE INSURANCE COMPANY; an Illinois corporation; DOES 1-50,

Defendants.

Case No. 2:16-cv-04977-GHK-PLA

Assigned to the Hon. George H. King

**NOTICE OF MOTION AND MOTION FOR REVIEW OF MAGISTRATE JUDGE JAY C. GANDHI'S OCTOBER 12, 2016 MINUTE ORDER SANCTIONING ALLSTATE AND SETTING AN OSC ARISING OUT OF THE SEPTEMBER 30, 2016 EARLY SETTLEMENT CONFERENCE; OBJECTIONS TO, AND REQUEST FOR REJECTION OR MODIFICATION OF SAID ORDER; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF.**

***[FRCP 72(a) and Local Rule 72-2.1]***

DATE: December 5, 2016
TIME: 9:30 a.m.
CTRM: 650

*[Filed concurrently with Decl. of Suzanne Y. Badawi and Proposed Order]*

[Complaint filed: April 12, 2016]

**TO THE COURT AND TO PLAINTIFF AND HER COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that, on December 5, 2016 at 9:30 a.m. in Courtroom 650 in the United States District Courthouse for the Central District of California, located at United States Courthouse, 255 E. Temple Street, Los Angeles, CA, 90012, the Honorable George H. King presiding, Defendant Allstate Insurance Company ("Allstate") will and hereby does move the Court for review of Magistrate Judge Jay C. Gandhi's October 12, 2016 minute order ("October 12 Order"). (Docket No. 24.) Pursuant to Federal Rule of Civil Procedure 72(a), Allstate also objects to the October 12, Order as set forth in the attached Memorandum of Points and Authorities ("Objections").

The Motion and Objections are based on the following:

Pursuant to Federal Rule of Civil Procedure 72(a) and Local Rule 72-2.1, Defendant Allstate Insurance Company and its counsel submit this Motion and Objections to, and request for rejection or modification of, Magistrate Judge Jay C. Gandhi's October 12, 2016 minute order ("October 12 Order"), finding Allstate in bad faith, sanctioning Allstate, and setting an OSC re additional sanctions against Allstate and its counsel, arising from the September 30, 2016 early settlement conference.

On September 30, 2016, at an early settlement conference, the Honorable Jay C. Gandhi, U.S. Magistrate Judge ("the Magistrate Court"), *sua sponte* (1) found Allstate in bad faith, (2) sanctioned Allstate in the amount of $12,500 to be paid to plaintiff's counsel based on the theory that Allstate did not participate in the settlement conference in good faith because it offered a waiver of costs and did not disclose its offer sooner, and (3) set an Order to Show Cause ("OSC") to be heard on November 3, 2016, re why Allstate and its counsel (collectively "Allstate") should not be sanctioned another $1,000 each in connection with the September 30 early settlement conference, to be paid to the court. (Reporter's Transcript ["RT"] 29:1 – 33:24 (copy attached as Exhibit A to Badawi decl.); *see also* Docket No. 24).

The Magistrate Court also based its OSC on the fact Allstate's counsel was inadvertently five to ten minutes late to the settlement conference, and on undefined shortcomings in Allstate's confidential mediation statement. Because the Magistrate Court only issued a brief minute order (dated September 30, 2016 but not filed and served until October 12, 2016 [*see* Docket No. 24]), Allstate relies on the Recorder's Transcript that reflects the basis for the Magistrate Court's exercise of discretion. (*See* Docket No. 21; Ex. A attached to Badawi decl. ¶2, filed concurrently herewith.)

This Motion is based on this Notice, the accompanying Memorandum of Points and Authorities and Objections to the October 12 Order, the Declaration of Suzanne Badawi filed concurrently herewith, the Exhibit thereto, all pleadings, paper and other documentary materials in the Court's file for this action, those matters of which this Court may or must take judicial notice, and such other matters as this Court may consider.

DATED: October 26, 2016

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By *\/s/ Suzanne Y. Badawi*

SUZANNE Y. BADAWI
Attorneys for Defendant
ALLSTATE INSURANCE COMPANY

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..... 1

II. BACKGROUND FACTS ..... 3

III. LEGAL DISCUSSION ..... 11

A. Allstate and Its Counsel Should Not Be Sanctioned for Offering A Waiver of Costs and Not Increasing Its Offer Under Pressure ..... 12

B. Allstate and Its Counsel Cannot Be Found to Have Acted in Bad Faith or Sanctioned for Not Disclosing Allstate's Settlement Position to Plaintiff's Counsel Ahead of the Settlement Conference ..... 16

C. Allstate and Its Counsel Should Not Be Sanctioned for Counsel's Excusable Five to Ten Minute Tardiness ..... 17

D. Allstate and Its Counsel Should Not Be Sanctioned for Undisclosed Deficiencies in Its Confidential Mediation Brief ..... 18

E. Allstate Should Have Been Given Notice and Opportunity to Respond Fully Before Being Sanctioned $12,500 and Found In Bad Faith ..... 21

IV. CONCLUSION ..... 24

# TABLE OF AUTHORITIES

Page(s)

Cases

*Acquisto v. Manitowoc FSG Operations, LLC*
2012 WL 4722028 (W.D.N.Y. 2012) .......... 12

*Ayers v. City of Richmond*
895 F.2d 267 (9th Cir. 1990) .......... 22

*A.T. Reynolds & Sons, Inc.*,
452 B.R. 374, 382 (S.D.N.Y. 2011) .......... 12

*Cole v. U.S. Dist. Court of Dist. of Idaho*
366 F.3d 813 (9th Cir. 2004) .......... 22

*Dawson v. U.S.*
68 F.3d 886 (5th Cir. 1995) .......... 13

*Fink v. Gomez*
239 F.3d .......... 21

*Fink v. Gomez*
239 F.3d 989 (9th Cir. 2001) .......... 21

*G. Heileman Brewing Co., Inc. v. Joseph Oat Corp.*
871 F.2d 648 (7th Cir. 1989) (en banc) .......... 15

*Kothe v. Smith*
771 F.2d 667 (2nd Cir. 1985) .......... 12

*Lee v. Gates*
2005 WL 67087 (C.D. Cal. 2005) .......... 11

*Miranda v. Southern Pacific Transportation Company*
710 F.2d 516 (9th Cir. 1983) .......... 22

*Negron v. Woodhull Hosp.*
173 Fed. Appx. 77 (2nd Cir. 2006) .......... 1, 12

*Seibert v. Gene Security Network Inc.*
2014 WL 5808755 (N.D. Cal. 2014) .......... 21

*Tom Growney Equip., Inc. v. Shelley Irrigation Development, Inc.*
834 F.2d 833 (9th Cir. 1987) .......... 22

*U.S. v. Brown*
62 Fed.Appx. 165 (9th Cir. 2003) .......... 17

*Zambrano v. City of Tustin*
885 F.2d 1473 (9th Cir. 1989) .......... 23, 24

Statutes

Cal. Civ. Proc.
§ 998 .......... 19

Other Authorities

Fed. R. Civ. Proc.
16 .......... 12
16(c)(7) .......... 12
16(f) .......... 22
26 .......... 13
72(a) .......... 11, 12

**MEMORANDUM OF POINTS AND AUTHORITIES AND OBJECTIONS**

## I. INTRODUCTION

Allstate respectfully moves the Court to review and vacate the October 12 Order for the following reasons.

First, Allstate cannot be found to have acted in bad faith or be sanctioned for coming to the settlement conference with an offer for a waiver of costs, and not increasing that offer when pressed by the Magistrate Court and plaintiff's attorneys. The law affords parties the latitude to choose their own settlement positions. "A party is not required to change its settlement parameters by reason of a court order to attend a settlement conference." *Negron v. Woodhull Hosp.*, 173 Fed. Appx. 77, 79 n. 1 (2nd Cir. 2006).

Second, Allstate cannot be found to have acted in bad faith or be sanctioned if it did not reveal its settlement position to plaintiff ahead of the settlement conference. The parties were under no obligation to disclose their confidential mediation statements to each other, and therefore cannot be faulted for choosing not to do so. In any event, the parties were ordered to attend the settlement conference, and plaintiff had no ability to condition her attendance on Allstate making a settlement offer within her acceptable parameters.

Third, Allstate (or separately, its counsel) cannot be found in bad faith, sanctioned, or subject to an OSC re additional sanctions because its counsel arrived five to ten minutes late to the settlement conference, with a legitimate and reasonable explanation. The small delay, which was not intentional or even reckless, was inadvertent and could not have been reasonably avoided. Nor was counsel's tardiness the result of disrespect for the Magistrate Court or for plaintiff or her counsel. Further, there is no evidence it caused harm.

Fourth, Allstate should not be found in bad faith, sanctioned, or subject to an OSC re additional sanctions based on undefined deficiencies in Allstate's confidential mediation statement. While a sanction award is discretionary when

supported, it cannot be arbitrarily imposed. Allstate's eight-page confidential mediation statement fully communicated the material points concerning Allstate's position required by the Magistrate Court's pre-settlement conference order. If there were any deficiencies in the mediation statement, they were inadvertent. And, to the extent either Allstate or plaintiff did not strictly comply with the Magistrate Court's pre-settlement conference order in submitting their mediation statements, their failure to comply would not have excused the other party's duty to appear at the mandatory settlement conference ordered by this Court.

Finally, the Magistrate Court *sua sponte* issued the $12,500 sanction based on plaintiff's counsel's off-the-cuff guestimates of the hours that *two* attorneys spent preparing plaintiff's mediation brief, traveling to the court, and attending the court-ordered mediation (at one point, the estimate reached 30 hours). The Magistrate Court required Allstate's counsel to try to refute the inflated figures on the spot, without notice. While *any* sanction award is unreasonable under the circumstances of the settlement conference, the Magistrate Court abused its discretion in reaching its award, both in process and amount. Due process requires that Allstate be given notice and an appropriate opportunity to respond before sanctions are awarded against it. If the Court intends to approve any sanction against Allstate, Allstate should be afforded the opportunity to refute both the amount of the award and the Magistrate Court's bad faith finding.

The Magistrate Court erred in awarding sanctions against Allstate in the amount of $12,500 for plaintiff's counsel's attorneys' fees, and in setting an OSC why Allstate and its counsel each should not have to pay an additional $1,000 to the Magistrate Court for its time and efforts in connection with the settlement conference. Therefore, Allstate and its counsel respectfully request that the Court reject the October 12 Order of the Magistrate Court, and order it vacated. Alternatively, Allstate requests that the Court reduce the sanction award to no more than $500, and vacate the OSC against it and its counsel.

## II. BACKGROUND FACTS

On September 15, 2016, the Honorable George H. King ("the Court") issued an order requiring the parties to attend an early settlement conference before the Magistrate Court within 30 days. (Badawi decl., ¶3.) Three days earlier, during a scheduling conference in chambers, the Court had asked if the parties were interested in an early mediation. (*Id.*) Allstate's counsel responded at that time that an early mediation was unlikely to be productive before discovery because there was no evidence to support plaintiff's claims. (*Id.*) Plaintiff's attorney stated that Allstate did not need discovery because it could read the allegations of the complaint (at the scheduling conference, the Court granted the plaintiff leave to file her First Amended Complaint within 10 days, *see* Docket No. 15). (*Id.*) Despite Allstate's counsel's expressed concerns about the lack of any evidence that would support Allstate paying any money to settle the case, and plaintiff's counsel's insistence that negotiations would only be based on the disputed allegations in the yet-to-be-filed First Amended Complaint, the Court ordered the parties to an early settlement conference in front of the Magistrate Court. (*Id.*)

The Court, however, set deadlines for *two* ADR proceedings at that time: the early settlement conference (to be completed within 30 days of the scheduling conference) and another later mediation (to be completed by March 31, 2017, approximately six months later and after the discovery cutoff). (See Docket No. 15.) As to the first anticipated early settlement conference, the Court's minute order indicates "this case may benefit from early settlement discussions." (*Id.* at 1.) As to the second mediation, the Court stated in the minute order, "If the case is not resolved at the early settlement conference, the parties shall conduct a follow-up settlement conference or mediation by no later than March 31, 2017." (*Id.*) The Court also accounted for the possibility the case would not settle at either settlement conference. (*Id.*) Allstate understood the intent of the scheduling order to be that the Court set the early settlement conference to take place before discovery so that

the parties would start the ADR process to explore the possibility of early resolution. But if the parties did not agree to a settlement at the early settlement conference, the parties would continue to attempt to resolve the litigation up to a second required settlement conference after discovery.

In compliance with the Court's order, Allstate agreed with plaintiff's counsel that the early settlement conference could be held on September 30, 2016. (Badawi decl., ¶5.) The Magistrate Court thus issued an order setting the early settlement conference for September 30, 2016 and requiring the parties to submit a confidential mediation statement to it by September 23, 2016. (*Id.*) Pursuant to the order, Allstate's counsel submitted Allstate's confidential mediation statement and described Allstate's position regarding the facts and law, as well as its position that the case had no merit as there was no evidence of bad faith. (Badawi decl., ¶6.)

In the late afternoon on September 29, the day before the settlement conference, Allstate's counsel was at a mediation at Judicate West when she noticed the Magistrate Court had called her office and left a voicemail message to call back. (Badawi decl., ¶7.) Allstate's counsel found a break in her mediation to return the Magistrate Court's call from her cell phone, although the public nature of the mediation venue made it difficult for her to communicate with the Magistrate Court in the phone call. (*Id.*) In fact, at one point during the call, Allstate's counsel had to return to the mediation room where the mediator was present. Allstate's counsel stepped out again but there were still people around her so she had to be circumspect in discussing the case. (*Id.*) Nevertheless, in the phone call, Allstate's counsel responded to all of the questions the Magistrate Court asked of her. (*Id.*) She informed the Magistrate Court that plaintiff's medical expenses were actually much less than plaintiff represented and that Allstate overpaid the claim. (*Id.*) Allstate's counsel stated that she would bring the medical expense records to the early settlement conference with her. (*Id.*) Allstate had served discovery by that time, but had not yet received any responses to it or been able to take any of the necessary

depositions. (*Id.*) The remainder of the call was unrelated to the case. (*Id.*) In the telephone conversation, the Magistrate Court never mentioned any deficiencies in Allstate's confidential mediation statement and never asked for Allstate's settlement position. (*Id.*; *see also* RT 6:22-24.) If the Magistrate Court had done so, Allstate's counsel would have provided that information in the call. (Badawi decl., ¶7.)

During the week leading up to September 30, 2016, Allstate's counsel ran her GPS in the mornings around 8:30 a.m. to see how long it would take to travel from her children's school to the Federal Courthouse in Santa Ana in rush hour traffic. (Badawi Decl., ¶8.) Every day for three days, including the morning of the hearing, Allstate's counsel's GPS tracker stated that it would take 55 minutes, give or take a few minutes. (*Id.*) Therefore, Allstate's counsel did not book morning care for her children as she often does as a single mother if she requires additional time to reach a destination. (*Id.*) Allstate's counsel determined that if she left from her children's school for the Court at 8:30 a.m., she would arrive 30 minutes early – a reasonable cushion for unanticipated traffic. (*Id.*)

On September 30, 2016, Allstate's counsel dropped her children at school and at exactly 8:30 a.m., started her GPS tracker and started driving for the hearing. (Badawi decl., ¶9.) However, because of a very long freight train blocking her path, she was unexpectedly stuck for about 30 minutes. Even after the freight train finally passed, the congestion was so bad that traffic did not start moving freely for some time. (*Id.*) When she realized that the unexpected delay would affect her ability to timely reach the courthouse, Allstate's counsel immediately called her client at approximately 9:00 a.m. to let him know that she might be about five minutes late and to let the Court know that she was blocked by a train. (*Id.*)

As a result of the traffic problem caused by the slow-moving freight train, Allstate's counsel arrived between five and ten minutes late to the courtroom and checked in. (Badawi decl., ¶10.) Approximately five to eight minutes later, the Magistrate Court came out and took the bench and the hearing started (the court

reporter's transcript shows she began transcribing the events in open court at 10:18 a.m.). (*Id.*)

The Magistrate Court spoke for two minutes on the record before caucusing separately with the parties and their counsel. (See RT 3-4.) In that initial joint session on the record, the Magistrate Court did not raise the short delay in the start of the early settlement conference. (Badawi decl., ¶11.) Nor did the Magistrate Court suggest that either of the parties' mediation statements did not comply with its September 19, 2016 Order. (*Id.*)

The Magistrate Court caucused at length with plaintiff and her counsel first, from just after 10:20 a.m. until about noon. (Badawi decl., ¶12.) Then, at about noon, the Magistrate Court caucused with Allstate and its counsel for about 10-15 minutes. (*Id.*) The Allstate representative at the settlement conference had full authority to settle the case and was prepared to spend the entire day at the conference, pursuant to the Magistrate Court's order. (*Id.*) Consistent with the Court's September 12 scheduling order and as a measure of good faith in the ADR process outlined by the Court, Allstate brought documents supporting its position in the lawsuit to the early settlement conference to show to the Magistrate Court and plaintiff's counsel. (*Id.*) Allstate also expected to receive documents from plaintiff that supported her claims, given that the Magistrate Court's settlement conference order required that plaintiff's settlement conference statement itemize her monetary damages claimed, "including the evidentiary bases" for them. (Docket No. 16, p. 3.) Those documents would have helped the Magistrate Court and Allstate to be able to evaluate plaintiff's claims and to increase the likelihood of settlement early in the litigation process. (*See* Badawi decl., ¶12.) But plaintiff did not provide Allstate with evidentiary support for her damages claims at the early settlement conference. The most that Allstate's counsel was shown briefly by the Magistrate Court was a few page document that appeared to evidence a loan, but which didn't support a conclusion that Allstate was the cause of plaintiff needing to obtain the loan. (*Id.*)

It was apparent after Allstate conveyed its offer during its caucus with the Magistrate Court that the Magistrate Court was going to immediately terminate proceedings rather than continue the conference for further negotiations. (*Id*.)

After the caucusing was complete, the Magistrate Court ordered Allstate's counsel into chambers for a private meeting for at least 15-20 minutes, during which Allstate's counsel understood that the Magistrate Court intended to take punitive measures against her personally because Allstate had come to the early settlement conference offering to waive costs and because she did not provide that information when she returned the Magistrate Court's call the day before. (Badawi decl., ¶13.) Allstate's counsel felt pressured because the Magistrate Court thought her client's settlement offer was insufficient, and she expressed her discomfort in the private meeting. (*Id.*) During the private meeting, the matters of counsel having arrived a few minutes late and of any deficiencies in Allstate's confidential mediation statement were not raised. (*Id.*)

The Magistrate Court then ordered Allstate's counsel to accompany it into a different room with plaintiff and her two attorneys – Brad Treusch and Keith Berlin (but not Allstate). (Badawi decl., ¶14.) In that room and in the presence of the Magistrate Court, Mr. Treusch raised his voice harshly at Allstate's counsel, berated her because Allstate was not offering more, and scoffed at her request for evidentiary support. (*Id*.) Plaintiff's counsel's conduct was so unprofessional, unnerving and distressing to Allstate's counsel that she would have walked out had she not been ordered to be there. (*Id.*)

After about 10 to 15 minutes of this behavior, the Magistrate Court called the parties (including the Allstate representative this time) and their counsel to the courtroom for proceedings on the record. (*See* Badawi decl., ¶15.) The Magistrate Court took the bench and the matter reconvened on the record at 12:55 p.m. (RT 1, 4.) The Magistrate Court confirmed the case had not settled, that Allstate's position was that it needed more discovery and that its only offer at the early settlement

conference was to waive costs. (RT 4:19 – 6:25.) As a consequence, the Magistrate Court indicated its intent "to issue an order to show cause why Defendant Allstate should not be held for not negotiating in good faith and be sanctioned and Ms. Badawi be sanctioned personally." (RT 7:1-4.)

In response, Allstate's counsel confirmed Allstate's position that without any evidence to support plaintiff's claims, Allstate was only willing to offer a waiver of costs to settle the matter. She explained that Allstate would offer more if plaintiff provided documentation warranting a higher offer, and Allstate's representative (who was present) confirmed that he had full authority to settle the case (which the Magistrate Court acknowledged). (RT 7:1-14; 29:4-16; 48:4-14; 46:20-47:25.) If the parties had been allowed further discussion of the merits of their settlement position on the record (*see* RT 7:1-19; 12:12-13), Allstate's counsel would have reiterated what was contained in Allstate's confidential mediation statement – that Allstate's position was based on the lack of any evidence indicating Allstate had acted unreasonably in settling plaintiff's underinsured motorist claim. (*See also* RT 7:6-14; 11:15-25; 12:1-9; 29:4-16.) In the mediation statement, Allstate explained that (i) Allstate fully paid plaintiff's insurance claim ($220,000 new money in addition to the $15,000 already paid by the tortfeasor) and plaintiff was not suing for breach of contract, (ii) plaintiff's contention that she suffered an aneurysm and resulting complications from the subject automobile accident was contradicted by her own treating doctors, as well as by Allstate's independent medical expert, (iii) because of this disagreement over the nature and extent of plaintiff's accident-related injuries, Allstate was required to conduct discovery regarding plaintiff's medical condition in an effort to resolve the dispute, (iv) Allstate's efforts to conduct this discovery were appropriate and reasonably prompt, (v) Allstate was entitled to further discovery that would shed light on the discrepancies between plaintiff's claims and the opinions of her and Allstate's medical experts, and (vi) Allstate ended up foregoing the additional discovery and resolving the disputes

over plaintiff's claimed medical condition in her favor, despite the evidence and expert medical opinion that would have justified resolving those issues against her. (*See* Badawi decl., ¶15.) Allstate further pointed out that plaintiff was unwilling to provide evidentiary support for her claim that she was damaged because Allstate settled the underinsured motorist claim with her only after it had completed its investigation. (*Id.*) For these reasons, Allstate believed that plaintiff's bad faith claim lacked merit; Allstate had no reasonable basis to settle it for anything other than a waiver of costs. (*Id.*) At the settlement conference, to show that Allstate's offer for a waiver of costs under the circumstances was made in good faith Allstate also offered to pay the full cost of a mediator at a second mediation, at which time Allstate presumably would have the evidentiary support from plaintiff it had been requesting. (RT 11:15-25; 29:4-16; 36:11-18; *see also* RT 37:14-17; 48:4-14; Badawi decl., ¶15.)

Plaintiff's counsel claimed they would not have shown up at the Court-ordered early settlement conference if they had known Allstate would not offer more than a waiver of costs to settle plaintiff's damages claims for which she had provided no evidentiary support. (*See* RT 7:23-8:4.) After plaintiff's counsel made that claim, the Magistrate Court asked plaintiff's counsel to give their opinion on whether Allstate was participating in good faith and what they believed the appropriate remedy would be. (*See* RT 9:3-17.) Plaintiff's counsel proposed that the Magistrate Court sanction Allstate. (*See* RT 9:13-17.)

The Magistrate Court then further found Allstate's confidential mediation statement did not fully comply with its September 19 Order, and the Magistrate Court based its OSC on that as well. (*See* RT 10:14-20.) The Magistrate Court did not specify the nature of the deficiencies at the hearing or in his October 12 minute order. The Magistrate Court may have been alluding to the subparagraphs of its September 19 Order asking for settlement history and attorney's fees and costs expended to date. (*See* Badawi decl., ¶17.) As to the requirement that the mediation

statements describe the attorneys' fees and costs expended to date, Allstate interprets that requirement to apply only to plaintiff since Allstate (as the defendant) was not seeking and had no entitlement to fees as damages. (*Id.*) As to the subparagraph requiring that the mediation statements describe the settlement history, Allstate unintentionally and inadvertently omitted that information from its statement. (*Id.*) However, the Magistrate Court already had that information as it was contained in plaintiff's settlement conference statement, and Allstate does not disagree with the history as stated by plaintiff. (*Id.*) The Magistrate Court also seemed to fault Allstate for not disclosing its confidential mediation statement to plaintiff's counsel ahead of the settlement conference (*see* RT 10:8-20), although the Magistrate Court's order had not required Allstate to do so. (*See* Docket No. 16.)

Finally, the Magistrate Court stated it was also relying on the fact Allstate's counsel was between five and ten minutes late to the early settlement conference, refusing to excuse her short tardiness despite the unavoidable circumstances she explained on the record. (See RT 10:21-14:1; see also Badawi decl., ¶19.) There was no discussion on the record of how that tardiness caused any prejudice to plaintiff, her counsel, or the Magistrate Court. (*See id.*)

The discussion on the record continued from there, with much of the record dedicated to plaintiff's counsel's estimates, without evidentiary backup and not under oath, as to the amount of time they had expended preparing for and attending the settlement conference. (See RT 16:6-26:22.) The Magistrate Court *sua sponte* sanctioned Allstate in the amount of $12,500 payable to plaintiff's counsel for "not negotiating in good faith." (RT 7:1-4; 29:18-23.) Without notice or evidentiary support, the Magistrate Court asked Allstate's counsel for her immediate response regarding whether plaintiff's claimed attorneys' fees were reasonable. (RT 19:24-27:3.)

The Magistrate Court also set an OSC to be heard on November 3, 2016, re why Allstate and its counsel should not be sanctioned an additional $1,000 in

connection with the September 30, 2016 early settlement conference. (*See* RT 31:9-17.) On October 11, 2016, Allstate and its counsel submitted their response to the OSC and a declaration addressing the Magistrate Court's concerns. (*See* Docket Nos. 23, 23-1). On October 12, 2016, the day after Allstate and its counsel filed their response to the OSC, the Magistrate Court filed its minute order for the September 29 settlement conference, indicating the OSC was for a $1,000 sanction each, against Allstate and Allstate's counsel. (*See* Docket No. 24.)

On October 17, 2016, Allstate's counsel submitted a supplemental declaration. (Docket No. 25.) In the supplemental declaration, she explains that if the Court issues a $1,000 sanction against her personally, she will be required to report the sanction to the California State Bar. (*See* Badawi decl., ¶24.) In other cases where she has represented Allstate and Allstate's counsel has settled those cases for a waiver of costs, neither Allstate nor Allstate's counsel were sanctioned. (Badawi decl., ¶23; RT 27:18-28:4; 20:11-17.) Allstate's counsel has never been found to have negotiated in bad faith in a mediation in over 18 years of practice, including in the mediations where she was able to settle the case for a waiver of costs. (Badawi decl., ¶23.)

## III. LEGAL DISCUSSION

Under Federal Rule of Civil Procedure 72(a), a district court "shall modify or set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to law." *Lee v. Gates*, 2005 WL 67087, *1, 2 (C.D. Cal. 2005) (reconsideration under rule 72(a) of magistrate judge's order granted where the magistrate judge did not specify a legal basis for the imposition of its sanction and the sanctions were ordered without due process requirements of notice or an opportunity to be heard; the notice requirement has been interpreted to mean 'specific' notice of the sanctioning authority being considered and the conduct alleged to be sanctionable).

The Magistrate Court's minute order served October 12 is basic in its terms, disclosing nothing more than that it found Allstate failed to "participate in good faith" and to "comply with the Court's Order issued on September 19, 2016." (Docket No. 24.) For this, and without further explanation, the Magistrate Court awarded "reasonable attorneys' fees and costs in the amount of $12,500 to Plaintiff's counsel" and issued an OSC why Allstate and its counsel "should not be sanctioned in the amount of $1,000 each." (*Id.*) The Magistrate Court's minute order is clearly erroneous and contrary to law, and should be vacated.

**A. Allstate and Its Counsel Should Not Be Sanctioned for Offering A Waiver of Costs and Not Increasing Its Offer Under Pressure**

While a court can require parties to appear for a settlement conference and can sanction them for failing to do so, it cannot force a settlement, sanction a party for refusing to make a settlement offer at all, or use "pressure tactics" to coerce a settlement. *See, e.g., Negron v. Woodhull Hosp.*, 173 Fed. Appx. at 79 n. 1 ("a court cannot force litigants to settle an action"); *see also Acquisto v. Manitowoc FSG Operations, LLC*, 2012 WL 4722028, *3 (W.D.N.Y. 2012) ("[A]lthough courts may require parties to participate in mediation, they lack the power to sanction a party for refusing to make a settlement offer."); *A.T. Reynolds & Sons, Inc.*, 452 B.R. 374, 382 (S.D.N.Y. 2011) ("It is well-settled that a court cannot force a party to settle, nor may it invoke 'pressure tactics' designed to coerce a settlement." [citation omitted.]); *Kothe v. Smith*, 771 F.2d 667, 669 (2nd Cir. 1985) ("In short, pressure tactics to coerce settlement simply are not permissible. [Citations omitted.] 'The judge must not compel agreement by arbitrary use of his power and the attorney must not meekly submit to a judge's suggestion, though it be strongly urged.' " [quoting *Brooks v. Great Atlantic & Pacific Tea Co.*, 92 F.2d 794, 796 (9th Cir. 1937)]; *See also Kothe* at 669 ("Although subsection (c)(7) of Rule 16 . . . was designed to encourage pretrial settlement discussions, it was not its purpose to 'impose settlement negotiations on unwilling litigants.'" [citing *Advisory Committee*

*Note*, 1983, 97 F.R.D. 205, 210]); *Dawson v. U.S.*, 68 F.3d 886, 897 (5th Cir. 1995) (Court held district court abused its discretion by requiring "making a settlement offer as part of a good-faith effort to settle.").

On September 15, at the first scheduling conference after removal of the case from state court and before any discovery, the Court ordered the parties to an early settlement conference within 30 days. At the time the settlement conference was ordered, plaintiff had not yet produced any evidence to support the allegations in her complaint, yet plaintiff was claiming millions of dollars in damages. Without having been provided any evidence to support plaintiff's damages claims, Allstate's counsel expressed her opinion to the Court at the September 15 scheduling conference that an early settlement conference would be unproductive. She had also expressed this position earlier to plaintiff's counsel at the Rule 26 conference. (Badawi decl., ¶6.) But the Court required the parties to participate in early mediation, and Allstate complied with the Court's order.

And so the settlement conference was set for September 30. An Allstate representative with full settlement authority and Allstate's counsel attended the settlement conference, planning on spending the entire day negotiating in compliance with the Court's order. (*See* RT 46:20 – 47:25, Badawi decl., ¶12.) At the end of the settlement conference, however, Allstate was improperly sanctioned $12,500 for offering no more than a waiver of costs where plaintiff had failed to provide evidentiary back up for her claims that Allstate had handled her underinsured motorist claim improperly and that she was damaged as a result.

The circumstances at the settlement conference and the statements reflected on the record show the sanction was improper under the law. After caucusing with plaintiff's counsel for approximately an hour and a half, and caucusing with Allstate and its counsel for approximately 10-15 minutes, the Magistrate Judge met privately with Allstate's counsel (without her client present) for 15-20 minutes. In that private meeting, Allstate's counsel understood that the Magistrate Court intended to

take punitive measures against her personally because Allstate came to the settlement conference only offering to waive costs. Then the two attorneys representing plaintiff and the Magistrate Court joined in pressuring Allstate's counsel for another 10-15 minutes. When Allstate did not submit to the pressure imposed, the Magistrate Court went on the record and sanctioned Allstate for refusing to offer more in settlement. The Magistrate Court stated its intention:

> "THE COURT: All right. So where the Court is headed on this is to issue an order to show cause why Defendant Allstate should not be held for not negotiating in good faith and be sanctioned and Ms. Badawi be sanctioned personally. Ms. Badawi, do you want to be heard on that?
>
> MS. BADAWI: Yes, Your Honor. We – you know, we did offer a waiver of costs today. We feel that we didn't act in bad faith, that we don't have any damage documentations. We would – could offer more if we get the damage documentations that would support a greater offer than that, but at this time, having had no damage documentation to support it, we felt that the $235,000 that we paid for the claim was adequate, was the full amount of the claim, and that there was no evidence of bad faith.
>
> THE COURT: I understand the merits of the position. . . . I just want to clarify there's no offer other than a waiver of costs for today.
>
> MS. BADAWI: Other than a waiver of costs today –
>
> THE COURT: Okay.
>
> MS. BADAWI: --without the damage documentation."

(RT 7:1-22.)

Later, Allstate's counsel expressed Allstate's position again, and showed Allstate's willingness to continue negotiating at a later mediation that Allstate would pay for, after plaintiff provided evidentiary support for her claimed damages:

> "MS. BADAWI: Yes, Your Honor. We did come here in good faith. We came here with a waiver of costs today without having any damage documentation. We understand that there are damage documents that are going to be provided. We want to conduct some discovery. We offered to pay for a private mediation – the full amount – to show our good-faith interest in wanting to resolve the case. We felt that it'll be more productive to make a – more of an offer than what we've offered if we have the damage documentation and to reconvene

> at a time when we have the documentation to support something greater than that.
>
> And so we did come here today – we were ordered to come here today, first and foremost. We didn't come here – you know, we were ordered to be here. So we were here, and we came here with what we felt at this time was a reasonable offer based on what we have. We paid $235,000. We didn't feel that we acted in bad faith. We felt that a waiver of costs today was reasonable based on the documentation we had."

(RT 11:15 – 12:9.)

Thus, this was not a case where Allstate failed to comply with the Court's order that it participate in an early settlement conference. Allstate sent a representative to the mediation with full authority to settle the case. (*See* RT 46:20 – 48:1 (Magistrate Court indicated it "never doubted" Allstate's representative at the settlement conference had the authority to resolve the case).) Allstate and its counsel were prepared to spend the day in the settlement conference. (Badawi decl., ¶12.) Instead, almost immediately after Allstate made its offer the Magistrate Court terminated the proceedings, expressing that he was "disappointed" with Allstate's *settlement position* that it offered to waive costs. (*See* RT 29:4-16; 34:6-8.)

Under the law, sanctioning Allstate for failing to make a particular settlement offer (i.e., a monetary offer instead of offering only to waive costs) is improper coercion. *See G. Heileman Brewing Co., Inc. v. Joseph Oat Corp.*, 871 F.2d 648, 653 (7th Cir. 1989) (en banc) ("If this case represented a situation where . . . [a party] was sanctioned because [it] refused to make an offer to pay money – that is, refused to submit to settlement coercion – we would be faced with a . . . situation we would not countenance"). The Court should not countenance this type of settlement coercion, and the Magistrate Court's $12,500 sanction order should be set aside.

**B. Allstate and Its Counsel Cannot Be Found to Have Acted in Bad Faith or Sanctioned for Not Disclosing Allstate's Settlement Position to Plaintiff's Counsel Ahead of the Settlement Conference**

After faulting Allstate for not offering more than a waiver of costs to settle, the Magistrate Court went on to ask plaintiff's counsel if Allstate had told them before the settlement conference about "any of these positions" (i.e., offer of waiver of costs with the possibility of a greater offer dependent on plaintiff providing evidence to support her claims). (RT 7:23-8:1.) Plaintiff's counsel's answer – "absolutely not" – was not a fair response. (*See* RT 7:23-8:4.) True, Allstate had chosen to keep its confidential mediation statement confidential. But plaintiff was well aware that Allstate was not approaching the settlement conference as a vehicle for plaintiff to obtain an unsupported settlement from it. Plaintiff's counsel was present at the scheduling conference where Allstate's counsel expressed Allstate's position that a settlement conference would not be productive until plaintiff produced *evidence* to support her claims. (Badawi decl., ¶6.) Moreover, in the settlement history in her mediation statement plaintiff told the Magistrate Court that Allstate had never offered her money in settlement. (*Id.*)

Nevertheless, the Magistrate Court continued on, asking plaintiff's counsel if they would have attended the court-ordered settlement conference if they had known Allstate's position before the mediation ("Absolutely not"), and their position on the threatened OSC (the Court should set an OSC because "it doesn't appear that Allstate is here today in good faith to negotiate a settlement"). (RT 8:2-11.) The Magistrate Court erred in adopting plaintiff's counsels' reasoning.

Even if plaintiff did not know Allstate's settlement position, *which she did*, a party does not act in bad faith simply because it elects not to disclose its position to the other side ahead of the settlement conference. There is no rule of law or court order requiring the parties to do so. On the contrary, the Magistrate Court's Order in advance of the settlement conference required the parties to submit "confidential"

mediation statements. How can Allstate be sanctioned for, consistent with that Order, choosing not to disclose its settlement position to plaintiff?

In any event, awarding plaintiff's counsel their estimated attorneys' fees of $12,500 incurred in preparing their settlement conference letter brief and attending the settlement conference was clear error. The parties both were ordered to attend the settlement conference, and plaintiff had no ability to condition her attendance on Allstate making a settlement offer within her acceptable parameters (notwithstanding her counsel's self-serving assertion that they would "absolutely not" have attended). Plaintiff's attorneys' costs of preparing settlement conference letter and attending the settlement conference cannot be reasonably attributed to Allstate because plaintiff's counsel would have had to prepare the letter and attend the conference regardless of Allstate's actions.

Allstate's purportedly undisclosed settlement position did not cause plaintiff's counsel to attend the settlement conference, and Allstate should not be sanctioned or found to have acted in bad faith for failing to disclose it to plaintiff ahead of the settlement conference.

**C. Allstate and Its Counsel Should Not Be Sanctioned for Counsel's Excusable Five to Ten Minute Tardiness**

Allstate and its counsel object to the Magistrate Court's sanction order and OSC to the extent they were based on the fact that Allstate's counsel was unintentionally five to ten minutes late to the settlement conference. The Ninth Circuit has stated that a counsel's inadvertent tardiness could not support a bad faith finding. *See U.S. v. Brown*, 62 Fed.Appx. 165 (9th Cir. 2003) (Court admonished counsel to "be more attentive to scheduling matters" in the future) (quoting *Fink v. Gomez*, 239 F.3d 989, 992 (9th Cir. 2001)).

Despite significant advance planning and diligent execution of a plan to arrive timely for the settlement conference on September 30, Allstate's counsel ran into an unexpected literal roadblock on her way to the courthouse that morning in the form

of a slow-moving (or stopped) freight train. (Badawi decl., ¶¶ 8-10.) Traffic in her necessary route of travel came to a standstill, delaying her trip for more than half an hour. As a result, rather than being 30 minutes early to the courthouse, as she had planned, Allstate's counsel was five to ten minutes late. (*Id.*) The Court took the bench five to ten minutes after she arrived, and made no mention of the late start or inquired as to the reason for it. (RT 3-4.) The short delay appeared to have been of no consequence to the running of the settlement conference – the sort of thing that opposing counsel in a case regularly accommodate as a professional courtesy. (*Id.*)

For these reasons – the measures Allstate's counsel took to be on time, the unexpected obstruction of the freight train that was outside of her control, the very short delay involved, and the absence of any impact that the short delay had on the almost four hour settlement conference – neither Allstate nor its counsel should be sanctioned because its counsel arrived between 10:05 a.m. and 10:10 a.m. for a 10:00 a.m. settlement conference. Because it cannot be determined whether the $12,500 sanction is based in part on Allstate's counsel's inadvertent and minimal tardiness, the sanction order should be vacated. In addition, the OSC should be discharged.

**D. Allstate and Its Counsel Should Not Be Sanctioned for Undisclosed Deficiencies in Its Confidential Mediation Brief**

After questioning Allstate's good faith participation in the settlement process, due to its unwillingness to offer money to settle without evidentiary support for plaintiff's damages claims, the Magistrate Court asked plaintiff's counsel whether Allstate had provided a copy of its confidential mediation brief to them. (RT 7:1 – 10:13.) When plaintiff's counsel answered "no," the Magistrate Court stated it "further finds that the brief that was actually submitted by defendant did not comply with the Court order issued on September 19th and what it had required – or ordered." (RT 10:8-17.) The Magistrate Court indicated that it was electing "at this time not to highlight the particular deficiencies" to protect confidential settlement

discussions, but nonetheless found that the undefined deficiencies in Allstate's confidential mediation statement were also "a basis for the Court's O.S.C." (RT 10:14-20.) The Magistrate Court appeared to have not yet analyzed Allstate's mediation statement for deficiencies, because it instead asked Allstate's counsel to look again at the settlement conference order and analyze whether Allstate's mediation brief addressed all of the listed items. (RT 14:11-16:5.) When Allstate's counsel got to item "B" on the list – "An itemized statement of the monetary damages claimed and of any other relief sought, including the evidentiary bases for the monetary damages and/or other relief sought" – not surprisingly she answered, "A, yes. B – no, not all of them." (RT 16:5.)

Neither Allstate nor its counsel can be sanctioned for failing to address in its mediation brief such matters (as in item B) that were within the *plaintiff's* purview, not the defendant's. Ironically, it is the plaintiff's failure to satisfy this item in her mediation statement ("the evidentiary bases for the monetary damages and/or other relief sought") that was the reason Allstate was unable to raise its settlement offer above a waiver of costs at the settlement conference. (*See, e.g.*, RT 11:15-25.)

To the extent that the Magistrate Court finds any other shortcomings in the brief, they were inadvertent and unintentional. While Allstate did not include information about the history of settlement negotiations between the parties in its mediation statement, plaintiff's mediation statement (which she chose to disclose to Allstate) had already communicated the parties' settlement history to the Magistrate Court and Allstate did not disagree with the history as plaintiff had stated it. (Badawi decl., ¶ 17.) At the end of June, 2016, plaintiff had made an offer to compromise under California Code of Civil Procedure section 998, demanding $660,000 from Allstate in settlement. Allstate did not respond to that statutory offer before the case was removed to federal court. Plaintiff conceded that before the Court's September 12 scheduling conference, Allstate's counsel indicated she would need discovery from plaintiff before the matter could settle. (Badawi decl., ¶ 17.)

The same was true at the scheduling conference itself. At the time the Magistrate Court spoke with Allstate's counsel on the phone before the settlement conference, it was aware from plaintiff's mediation statement that Allstate had not yet made a settlement offer in the case and had reservations whether the case would settle without discovery. (Badawi decl., ¶17.) In other words, both the Magistrate Court and plaintiff's counsel had that settlement history before the settlement conference. Similarly, Allstate understood the requirement that the mediation statements describe the attorneys' fees and costs expended to date to apply only to plaintiff (who was claiming attorneys' fees as damages) since Allstate (as the defendant) was not seeking and had no entitlement to fees as damages. (*Id.*)

In compliance with the Magistrate Court's order, Allstate's eight-page Confidential Mediation Statement described Allstate's position regarding the facts and law, as well as Allstate's position that the case had no merit as there was no evidence of bad faith. Accordingly, Allstate should not be sanctioned for any variance between the listed items and its mediation statement, as those oversights were inadvertent and unintentional.

In any event, to the extent either of the parties' mediation statements did not strictly comply with the Magistrate Court's pre-settlement conference order, their failure to comply would not have been a basis for either of them to fail to appear at the mandatory settlement conference ordered by this Court.

Allstate objects to the extent the $12,500 sanction award and/or the OSC are based on undefined deficiencies in Allstate's settlement conference statement that were inadvertent and unintentional; the Magistrate Court's October 12 Order should be vacated.

### E. Allstate Should Have Been Given Notice and Opportunity to Respond Fully Before Being Sanctioned $12,500 and Found In Bad Faith

Allstate attended the settlement conference as ordered, stayed through the entirety of the settlement conference, and Allstate's representative had full settlement authority. Thus, as discussed above, neither the $12,500 sanction nor the OSC re why Allstate and its counsel *each* should be sanctioned an additional $1,000 is warranted or appropriate. Nor is the Magistrate Court's bad faith finding.

First, the Magistrate Court erred in finding Allstate acted in bad faith. Given the Magistrate Court's failure to make a specific finding at the settlement conference and the lack of any factual support for its finding in its minute order, it appears that the bad faith finding was made for the purpose of satisfying the legal requirement for imposing sanctions. In *Fink v. Gomez*, 239 F.3d at 992-93, the court indicated that where sanctions are issued based on the court's inherent power, there must have been bad faith by the party sanctioned. "Bad faith exists when a party acts 'vexatiously, wantonly, or for oppressive reasons.' [Citation omitted.] Examples of bad faith conduct include a fraud upon the court, delay or disruption of litigation, or interference with the enforcement of a court order. *Chambers* [*v. NASCO, Inc.*, 501 U.S. 32 (1991)] at 46. A court can also issue sanctions for 'willful or improper conduct' or for 'recklessness . . . combined with . . . frivolousness, harassment, or an improper purpose.' *Fink v. Gomez*, 239 F.3d [at] 992-94." *Seibert v. Gene Security Network Inc.*, 2014 WL 5808755 *2 (N.D. Cal. 2014).

Here, Allstate's actions did not rise to the level of bad faith. The only actions of which the Magistrate Court complained at the settlement conference are not bad faith actions as a matter of law: Allstate's decision to make a settlement offer of only a waiver of costs absent documentation warranting a higher offer, undefined and inadvertent shortcomings in Allstate's confidential settlement conference statement, and Allstate's counsel's one-time inadvertent tardiness. *See Fink v.*

*Gomez,* 239 F.3d at 992-93 (when sanctioning for violation of local rules, the court may not sanction for mere "inadvertent" conduct). The bad faith finding by the Magistrate Court is not supported by the facts or the law and should be vacated.

However, if Allstate or its counsel were subject to sanctions in the form of reimbursing plaintiff's counsel for the time they spent preparing for and attending the court-ordered settlement conference, then plaintiff's counsel should have been required to provide evidence supporting their fees and Allstate should have been allowed time to properly contest the fees claimed. The Ninth Circuit has held that sanctions should not be imposed without the due process protections of notice, an opportunity to respond, and a hearing. *Miranda v. Southern Pacific Transportation Company*, 710 F.2d 516, 522 (9th Cir. 1983). "These procedural requirements will ensure that: (1) the attorneys will have an opportunity to prepare a defense and to explain their questionable conduct at a hearing; (2) the judge will have time to consider the severity and propriety of the proposed sanction in light of the attorneys' explanation for their conduct; and (3) the facts supporting the sanction will appear in the record, facilitating appellate review." *Id*.; *see also Cole v. U.S. Dist. Court of Dist. of Idaho*, 366 F.3d 813, 821 (9th Cir. 2004) ("It is axiomatic that procedural due process requires notice of the grounds for, and possible types of, sanctions.") [citing *Weissman v. Quail Lodge Inc.*, 179 F.3d 1194, 1198 n. 4 (9th Cir. 1999)]; *Ayers v. City of Richmond*, 895 F.2d 267, 1270 (9th Cir. 1990) (Rule 16(f) sanctions); *Tom Growney Equip., Inc. v. Shelley Irrigation Development, Inc.*, 834 F.2d 833, 836 (9th Cir. 1987) (district court abused its discretion where "[n]o notice was given of the court's intention to impose sanctions and no opportunity was offered to explain the allegedly improper filings).

The $12,500 in sanctions against Allstate was imposed without proper notice, an opportunity to prepare a defense, and a hearing after notice and briefing. Allstate was not given proper notice because nothing in the law or process here informed Allstate that it, or its counsel, would be sanctioned because Allstate's counsel was

inadvertently tardy to the settlement conference. Nor was Allstate given notice that it could be found in bad faith and sanctioned for not offering more than a waiver of costs at the settlement conference or for purportedly not informing plaintiff of that position ahead of the settlement conference. Without notice, Allstate was ill-prepared to respond to plaintiff's counsel's fee requests, either as to the propriety of any fee award at all, or as to the amount of those fees. Nor was plaintiff's counsel required to provide more than a broad guestimate as to its fees, which the Magistrate Court prodded them to increase. Due process requires more.

The Ninth Circuit extensively discussed a district court's power to issue sanctions in *Zambrano v. City of Tustin*, 885 F.2d 1473 (9th Cir. 1989). Initially, the court recognized that "'[f]or a sanction to be validly imposed, the conduct in question must be sanctionable under the authority relied on.'" *Id.* at 1476. As shown above, Allstate's actions in connection with the settlement conference were not sanctionable. But even if they were, the court in *Zambrano* expressed its conclusion that "any sanction imposed must be proportionate to the offense and commensurate with principles of restraint and dignity inherent in judicial power. This last principle includes a responsibility to consider the usefulness of more moderate penalties before imposing an monetary sanction." *Id.* at 1480. For example, the court noted that "[a]s any one experienced in litigation knows, lectures in open court are often sufficient to press home the significance of local rules, particularly for a first time offense. Public embarrassment is, beyond cavil, a powerful motivator of human conduct."[1] *Id.* at 1480 fn. 24.

---

[1] The court in *Zambrano* also questioned the imposition of sanctions payable to the court, stating, "Moreover, we think it inappropriate for the court system to claim 'compensation' for being 'ill-used'. The court system is not a private party that needs to be reimbursed for its inconvenience." *Id.* at 1480. The OSC re sanctions here is improperly based on the Magistrate Court's claim for compensation for being "ill-used." The potential for $1,000 sanction against Allstate's counsel under

*{footnote continued}*

## IV. CONCLUSION

Allstate respectfully objects to the Magistrate Court's October 12 Order, and for all of the reasons set forth above, requests that the Court vacate it. As the Ninth Circuit stated in *Zambrano*, "Lawyers who willfully, repeatedly, or recklessly disregard court rules or orders may be sanctioned. But the authority of the court to punish violations of local rules should be reserved for serious breaches. Because counsel's conduct was only inadvertent, this is not such a case." 885 F.2d 1485. Likewise, this is not such a case warranting sanctions here.

DATED: October 26, 2016

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By *\/s/ Suzanne Y. Badawi*

SUZANNE Y. BADAWI
Attorneys for Defendant
ALLSTATE INSURANCE COMPANY

---

*{continued from previous page}* the circumstances here is especially onerous given the requirement that attorneys must report sanctions of $1,000 to the State Bar.