# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

YVONNE APELIAN, an individual,

Plaintiff,

v.

ALLSTATE INSURANCE
COMPANY; an Illinois corporation;
and DOES 1 through 50 inclusive,

Defendants.

Case No. LA CV 16-4977 GHK (PLAx)

**MEMORANDUM OPINION AND
ORDER IMPOSING SANCTIONS
AGAINST DEFENDANT ALLSTATE INS.
CO. AND DEFENDANT'S COUNSEL
SUZANNE BADAWI**

This matter arises pursuant to this Court's September 30, 2016 Order to Show Cause ("OSC"). [Dkt. No. 16.] The issue is why sanctions should not be imposed against Allstate Insurance Company ("Defendant") and Defendant's counsel, Suzanne Badawi ("Ms. Badawi") for: (1) failure to comply with the Court's Settlement Order ("Settlement Order") issued on September 19, 2016; and (2) failure to participate in good faith at a settlement conference.

On November 3, 2016, the Court held an OSC hearing ("OSC Hearing"), at which Peter H. Klee ("Mr. Klee") and Ms. Badawi appeared, representing Defendant.

Bradford Lee Treusch ("Mr. Treusch") and Keith A. Berlin ("Mr. Berlin") (collectively, "Plaintiff's counsel") appeared, representing Plaintiff.

The Court has reviewed: (1) Defendant's and Ms. Badawi's statements at the September 30, 2016, settlement conference ("Settlement Conference"), [Dkt. No. 21]; (2) Defendant's Response to the Court's OSC ("Defendant's Response"), [Dkt. No. 23]; (3) Ms. Badawi's supplemental declaration to Defendant's Response ("Badawi Supplemental Declaration"), [Dkt. No. 25]; (4) Plaintiff's counsel's Reply to Defendant's Response ("Plaintiff's Reply"), [Dkt. No. 26]; (5) Mr. Klee and Ms. Badawi's statements at the OSC Hearing, [Dkt. No. 44]; (6) Mr. Berlin and Mr. Treusch's declarations regarding attorneys' fees and costs incurred in preparing for and attending the Settlement Conference, [Dkt. Nos. 33, 33-2, 40]; and (7) the entire record and circumstances here.

After careful deliberation, and for the reasons discussed below, the Court: (1) issues sanctions in the amount of $500.00 against Defendant and $950.00 against Ms. Badawi; and (2) awards reasonable attorneys' fees and costs in the amount of $12,500.00 against Defendant and in favor of Plaintiff's counsel.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

On September 12, 2016, this case was referred to this Court for the purpose of conducting a settlement conference. [Dkt. No. 15.] The Court subsequently issued a Settlement Order, which: (1) scheduled the Settlement Conference for September 30, 2016; and (2) ordered each party to submit its confidential mediation statement by e-mail to the Court's chambers no later than Friday, September 23, 2016. [Dkt. No. 16.] The Settlement Order stated, in pertinent part, that the statements "**shall** contain the following information:

A.    A brief statement of the facts of the case, including each party's claims and defenses.  The Brief shall include citations to the applicable statutory or other grounds upon which claims or defenses are based.  The Brief should

identify the major factual and legal issues in dispute, and cite any controlling authorities.

B.      An itemized statement of the monetary damages claimed and of any other relief sought, including the evidentiary bases for the monetary damages and/or other relief sought.

C.      A summary of the proceedings to date, including any case management dates/deadlines already set, as well as the estimated length of trial, and whether a court or jury trial is contemplated.  The Statement shall also set forth the date(s) any party filed or intends to file any dispositive motion.

D.      A history of past settlement discussions, offers and demands.

E.      A forthright evaluation of the party's likelihood of prevailing on each of his, her, or its claims and/or defenses.

F.      The approximate amount of attorney's fees, time and costs expended to date, and an estimate of the fees, time and costs to be expended for[:] (i) further discovery; (ii) pretrial; and (iii) trial.

G.      The party's evaluation of the terms on which the case could be settled **reasonably and fairly**, taking into account the litigation position and settlement position of the other side.

H.      Any other relevant circumstances that counsel believe will assist the Court in conducting the settlement conference."

[Dkt. No. 16 at 3-4 (emphases in original).]

        The Settlement Order stated in all capital letters and in bold: "**THE PARTIES AND LEAD COUNSEL SHALL STRICTLY FOLLOW THESE INSTRUCTIONS OR OTHERWISE SANCTIONS MAY BE IMPOSED.**"  [Dkt. No. 16 at 1 (emphasis in original).]

        Plaintiff timely e-mailed its confidential mediation statement to the Court's chambers.

        Defendant, however, submitted its confidential mediation statement two days past the deadline, on September 25, 2016, at 10:07 p.m.  In her e-mail to the Court,

1   Ms. Badawi wrote, "I attempted to send [Defendant's] confidential mediation

2   statement from my hotel on Friday, but had some wifi issues, so I wanted to make sure

3   it went through today from my home system." Defendant's mediation statement was

4   also substantially incomplete; by the Court's count, Defendant failed to meet seven out

5   of the eight requirements listed in the Settlement Order, including basic information,

6   such as past settlement offers.

7          On September 29, 2016, the Court made pre-mediation calls to both Plaintiff's

8   counsel and Ms. Badawi. During this call, Ms. Badawi did not disclose that Defendant

9   was unwilling to settle. [Dkt. No. 21 at 5-6.]

10          On September 30, 2016, at the Settlement Conference, Defendant expressed for

11   the first time that it: (1) intended to propound additional discovery; and (2) was

12   unwilling to make any offer other than a waiver of costs.[1] [Dkt. No. 21 at 5.] The

13   Court expressed its intention to issue an OSC why Defendant and Ms. Badawi should

14   not be sanctioned for: (1) failure to comply with the Settlement Order issued on

15   September 19, 2016; and (2) failure to participate in good faith.[2] [Dkt. No. 21 at 7, 10;

16   Dkt. No. 24.]

17          Subsequently, after giving both Ms. Badawi and Plaintiff's counsel an

18   opportunity to be heard regarding the matter, the Court: (1) awarded reasonable

19   attorneys' fees and costs in the amount of $12,500 to Plaintiff's counsel, based on their

20   representations regarding preparation for and attendance at the Settlement Conference;

21   _____

22   [1]     Initially, during the Court's private caucus with Defendant and Ms. Badawi, Defendant was
    unwilling to negotiate *at all*, including offering any waiver of costs. [Dkt. No. 21 at 5-6.] Notably, at

23   the OSC Hearing, Ms. Badawi did not deny that Defendant took this position in the private caucus,
    and Mr. Klee professed ignorance about this issue. [Dkt. No. 44 at 26-27.]

24   [2]     Although the Court based its OSC, in part, on Defendant's failure to comply with the

25   Settlement Order, the Court elected "not to highlight the particular deficiencies [in open court] to
    [protect] confidential settlement discussions." [Dkt. No. 21 at 10.] Now however, given that

26   Defendant and Ms. Badawi freely summarized some of their confidential settlement discussions with
    the Court in their filings, and in open session at the Settlement Conference and OSC Hearing, the

27   Court addresses the issues raised in Defendant's Response, [Dkt. No. 23], and the Badawi
    Supplemental Declaration, [Dkt. No. 25], including any other discussions affirmatively raised by

28   Defendant and Ms. Badawi.

1    and (2) issued an OSC why Defendant and Ms. Badawi should not be sanctioned in the

2    amount of $1,000 each. [Dkt. No. 24.] With respect to the attorneys' fees, the Court

3    asked Ms. Badawi how long Defendant would need to make such a payment, and after

4    conferring with Defendant, Ms. Badawi responded, "Fourteen days, Your Honor."

5    [Dkt. No. 21 at 34-35.] The Court then scheduled the OSC Hearing for November 3,

6    2016. [*Id.* at 33; Dkt. No. 24.]

7          At the November 3rd OSC Hearing, the Court provided Mr. Klee, Ms. Badawi,

8    and Plaintiff's counsel the opportunity to be heard on the OSC. [Dkt. No. 44 at 4-5,

9    53, 56, 63.] Also, the Court noted that Defendant had not remitted the previously

10   ordered attorneys' fees, even though more than fourteen (14) calendar days had passed.

11   [*Id.* at 28-35.] The Court further ordered Plaintiff's counsel to submit a summary of

12   attorneys' fees and costs incurred in preparing for and attending the Settlement

13   Conference. [*Id.* at 69-70; Dkt. No. 32 at 2.]

14         At the conclusion of the OSC Hearing, Plaintiff's counsel articulated Plaintiff's

15   desire to withdraw from the case because she did not have the "physical or emotional

16   stamina to move forward with this case." [Dkt. No. 44 at 59.] Specifically, Plaintiff's

17   counsel noted that Plaintiff: (1) was 80 years old; and (2) had indicated that she could

18   not continue litigating in light of the numerous discovery requests that Defendant had

19   propounded after the Settlement Conference. [*Id.* at 58-60.]

20         In a Supplemental Declaration, Plaintiff's counsel explained that Defendant

21   propounded: (1) three sets of Requests for Production of Documents; (2) two sets of

22   interrogatories; (3) one Subpoena to Produce Documents; and (4) three Notices of

23   Videotaped Depositions. [Dkt. No. 40 at 7-8.] Not stopping there, prior to the OSC

24   Hearing, Ms. Badawi had sent an e-mail to Plaintiff's counsel stating that she was also

25   planning on deposing Plaintiff's children on January 10, 2017 and January 11, 2017.

26   [Dkt. No. 40 at 8.]

27         Plaintiff elected to dismiss the action with prejudice, in exchange for a

28   withdrawal of all pending discovery requests and Defendant's waiver of costs. [*Id.* at

71-75.] The parties also stipulated that the Court would reserve jurisdiction over the issue of the attorneys' fees and costs, and any order arising out of the Court's OSC. [*Id.* at 74-75.] The parties' agreement was memorialized in a written joint stipulation, which was filed on November 4, 2016. [Dkt. No. 31.]

On November 9, 2016, Plaintiff's counsel submitted their declarations regarding attorneys' fees, and therein: (1) specified their usual hourly billing rate; and (2) provided a chart detailing the hours spent preparing for and attending the Settlement Conference. [Dkt. No. 33.] According to the declarations, Plaintiff's counsel expended 57 hours total, at an hourly rate of approximately $500. [*See id.* at 2; Dkt. No. 33-2 at 2.]

On November 21, 2016, Defendant and Ms. Badawi filed their response to Plaintiff's declarations regarding attorneys' fees and costs, and objected to Plaintiff's counsel's figures. [Dkt. No. 36.]

## II.

## DISCUSSION

### A. Sanctions

#### 1. Legal Standard

Rule 16(f) of the Federal Rules of Civil Procedure confers authority upon federal courts to impose sanctions or other reasonable expenses, including attorney's fees, if a party or its attorney is "substantially unprepared to participate — or does not participate in good faith — in the conference"; or "fails to obey a scheduling or other pretrial order." Fed. R. Civ. P. Rule 16(f)(1). A settlement conference order is a pretrial order within the meaning of Rule 16(f). *See Pitman v. Brinker Int'l, Inc.*, 216 F.R.D. 481, 486-87 (D. Ariz. July 8, 2003), *amended on reconsideration in part*, *Pitman v. Brinker Int'l*, 2003 WL 23353478 (D. Ariz. Oct. 3, 2003) ("A magistrate judge has legal authority to impose sanctions for violations of its orders.") (citing Fed. R. Civ. P. 16(f)).

Litigants have an "unflagging duty to comply with clearly communicated case-management orders." *Martin Family Trust v. Heco/Nostalgia Enterprises Co.*, 186 F.R.D. 601, 604 (E.D. Cal. June 9, 1999) (citing *Rosario-Diaz v. Gonzalez*, 140 F.3d 312, 315 (1st Cir. 1998)).  The Ninth Circuit has continuously upheld the imposition of sanctions pursuant to Rule 16 for a party or its counsel's failure to comply with a court's settlement order. *See, e.g., Lucas Auto Eng'g, Inc. v. Bridgestone/Firestone, Inc.*, 275 F.3d 762, 769 (9th Cir. 2001); *Official Airline Guides, Inc. v. Goss*, 6 F.3d 1385, 1396 (9th Cir. 1993); *Ayers v. City of Richmond*, 895 F.2d 1267, 1270 (9th Cir. 1990).

### 2.    Analysis

Defendant and Ms. Badawi assert that sanctions are unwarranted for three reasons:

1.    "[Defendant] and its counsel should not be sanctioned $1,000 [each] based on undefined deficiencies in [Defendant's] confidential mediation statement or because [Defendant] failed to share the confidential statement or its contents with [P]laintiff's counsel prior to the [S]ettlement [C]onference," [Dkt. No. 23 at 2];

2.    "[Defendant] and its counsel cannot be sanctioned for coming to the [S]ettlement [C]onference with an offer only for a waiver of costs, and not moving from that offer at the [S]ettlement [C]onference when pressed by the judge and [P]laintiff's attorneys," [*id.*]; and

3.    "[Defendant] and its counsel should not be sanctioned $1,000 [each] because [Defendant's] counsel arrived 5 to 10 minutes late to the [S]ettlement [C]onference, with a legitimate and reasonable explanation," [*id.*]

The Court addresses each argument in turn.

1

2

        a.        <u>Defendant and Ms. Badawi's Failure to Comply With Court</u>
                       <u>Orders Warrants Sanctions</u>

3

4

     First, Defendant argues that it "should not be sanctioned for any variance between the listed items and its mediation statement." [*Id.* at 12.]

5

6

7

     However, the attempts to excuse Defendant and Ms. Badawi's noncompliance with the Settlement Order as "inadvertent" and "unintentional" are unavailing, and do not show why the Court should not impose sanctions. [Dkt. No. 44 at 6, 8, 18, 42, 53.]

8

        i.     *Deficiencies in Defendant's Mediation Statement*

9

10

11

12

13

     As a threshold matter, the Settlement Order plainly stated that the parties "shall strictly follow these instructions or otherwise sanctions may be imposed." [*See* Dkt. No. 16 at 1.] Yet, Ms. Badawi unilaterally omitted mandatory and pertinent information. By the Court's count, Defendant's mediation statement failed to provide the following *seven* out of eight categories[3] that were required by the Settlement Order:

14

   • *Each* party's claims and defenses;

15

16

17

   • An itemized statement of the monetary damages claimed and of any other relief sought, including the evidentiary bases for the monetary damages and/or other relief sought;

18

19

20

21

   • A summary of the proceedings to date, including any case management dates/deadlines already set, as well as the estimated length of trial, and whether a court or jury trial is contemplated, as well as the date(s) any party filed or intends to file any dispositive motion;

22

   • A history of past settlement discussions, offers and demands;

23

24

25

   • The approximate amount of attorneys' fees, time and costs expended to date, and an estimate of the fees, time and costs to be expended for further discovery, pretrial, and trial;

26

27

28

---

[3]    During the OSC Hearing, the Court noted that, under a charitable calculation, only six out of the eight categories were omitted. [Dkt. No. 44 at 54.] But the Court underscored that Ms. Badawi and Defendant *actually* omitted seven categories. [*Id.* (emphasis added).]

1    • The party's evaluation of the terms on which the case could be settled
2       reasonably and fairly; and
3    • Any other relevant circumstances that counsel believe will assist the Court
4       in conducting the settlement conference.
5  [*See* Dkt. No. 16 at 3-4 (emphasis added)]; Dkt. No. 23 at 3 (Ms. Badawi admitting
6  that Defendant's mediation statement described only "[Defendant's] position regarding
7  the facts and law . . . .").]
8        There appears to be no meaningful disagreement about Defendant's non-
9  compliance.  At the Settlement Conference, Ms. Badawi admitted in open court that
10 Defendant's mediation statement "[did not] provide every item that [the Court]
11 ordered." [Dkt. No. 21 at 23.]  Also, Mr. Klee conceded at the OSC Hearing, in an
12 understatement, that Ms. Badawi "may have not been completely compliant." [*See id.*
13 at 44.]  Rather, in response to the Court's inquiries about the numerous and substantial
14 deficiencies in Defendant's mediation statement, Mr. Klee repeatedly dismissed such
15 deficiencies as "technical violations." [Dkt. No. 44 at 41, 52.]
16       But violations of a court's order "are neither technical nor trivial." *Martin*
17 *Family Trust*, 186 F.R.D. at 603.  This Court's Settlement Order "is not a frivolous
18 piece of paper, idly entered, which can be cavalierly disregarded by counsel without
19 peril." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 610 (9th Cir. 1992)
20 (internal quotations and citations omitted).  Indeed, "[d]isregard of [an] order would
21 undermine the court's ability to control its docket, disrupt the agreed-upon course of
22 the litigation, and reward the indolent and the cavalier." *Id.*
23       To highlight one obvious point, if Defendant and its counsel had complied with
24 the requirements of the Settlement Order — for example, including Defendant's
25 evaluation of the terms on which the case could be settled reasonably and fairly, and
26 any other relevant circumstances that Defendant's counsel believed would assist the
27 Court — this "futile" and "wasteful" episode could have been avoided.  *See, e.g.,*
28 *Pitman*, 216 F.R.D. at 486-87 ("Defendant did not notify the Court before hand that a

1 | settlement conference at this time would be a futile act, thereby wasting the limited

2 | time, financial resources and energies of the Court and [p]laintiff on June 10, 2013.").

3 |   Two other aspects of Defendant's non-compliance with the Settlement Order

4 | merit brief elaboration here.

5 |   First, Ms. Badawi initially asserted that she "did not include information about

6 | the history of settlement negotiations between the parties in Defendant's statement

7 | because "[Defendant's] counsel had *already seen* that [P]laintiff had communicated

8 | the parties' settlement history to the Court and [Ms. Badawi] did not disagree with the

9 | history as stated by [P]laintiff." [Dkt. No. 23 at 3-4 (emphasis added).] Then directly

10 | contradicting herself, Ms. Badawi withdrew this alleged justification in her

11 | Supplemental Declaration, and "clarif[ied] that [she] received [Plaintiff's] statement

12 | after submitting [Defendant's]." [Dkt. No. 25 at 3.] Therefore, at a minimum, Ms.

13 | Badawi offers no legitimate reason for why the history of past settlement discussions

14 | was omitted from Defendant's mediation statement. *See also* L.R. 16-15.5(a) ("The

15 | parties shall submit in writing to the settlement judge . . . the party's settlement

16 | position, including the last offer or demand made by that party and a separate

17 | statement of the offer or demand the party is prepared to make at the settlement

18 | conference.").

19 |   But worse, the primary thrust of Ms. Badawi's original explanation for failure to

20 | comply with the Court's order was precisely that she had reviewed Plaintiff's

21 | mediation statement beforehand. [Dkt. No. 23 at 3-4.] It was a false statement, and a

22 | material one. As such, the Court raised this concern at the OSC Hearing. In response,

23 | Mr. Klee contended that Ms. Badawi should be commended for coming forward with

24 | her "clarification." [Dkt. No. 44 at 10.] But the Court questions whether an attorney

25 | with nearly 20 years of experience should have made a false statement of such

26 | magnitude in the first instance, particularly in a declaration sworn under penalty of

27 | perjury and presented to the Court to avoid sanctions, or per chance other motives were

28 | at work.

1    Second, during the OSC Hearing, Mr. Klee often claimed he "d[id]n't recall" or
2  did not "know . . . specifically" whether Defendant's mediation statement included: (1)
3  a summary of the proceedings to date, including case management deadlines and
4  estimated length of trial; (2) the date that Defendant intended to file any dispositive
5  motions; or (3) the parties' evaluation of the terms on which the case could settle
6  reasonably and fairly. [*See* Dkt. No. 44 at 20-21.] In the same vein of Ms. Badawi's
7  false testimony, the Court would have expected Mr. Klee to be familiar with the
8  requirements of the Settlement Order and the contents (or the lack thereof) of
9  Defendant's mediation statement.  Hence, his lack of recollection rang hollow,
10  charitably put.

11    In the end, the Court cannot find that Defendant's mediation statement
12  "complied with the Court's order and reasonably communicated [Defendant's]
13  position," as Ms. Badawi claims in Defendant's Response.  [Dkt. No. 23 at 4.]  In light
14  of the deficiencies, both quantitatively and qualitatively, in Defendant's mediation
15  statement, sanctions are warranted.

16              ii.    *Late Submission of Defendant's Mediation Statement*

17    Next, Ms. Badawi failed to submit Defendant's mediation statement by the
18  deadline set forth in the Settlement Order: "[o]n or before [**Friday,**] **September 23,**
19  **2016.**" [*See* Dkt. No. 16 at 3 (emphasis in original).]  Specifically, the Court did not
20  receive Defendant's mediation statement until Sunday, September 25, 2016, at 10:07
21  p.m. because, according to Ms. Badawi, she had "Wi-Fi problems in her hotel, and . . .
22  to make sure the Court got [the statement], she re-e-mailed it on Sunday."  [Dkt. No.
23  44 at 22.]

24    Interestingly, Ms. Badawi "did not contact the Court at all other than to re-e-
25  mail the [mediation statement] on Sunday to make sure . . . it would be received by the
26  Court." [Dkt. No. 44 at 13-14.]  Thus, the Court received no notice regarding the
27  delayed mediation statement.

28

1    Even if Defendant and Ms. Badawi's failure to comply with the Settlement
2    Order was "inadvertent" and "unintentional," which the Court could indulgently
3    assume, this Court has the authority under Federal Rule of Civil Procedure 16(f) to
4    impose sanctions. *See, e.g., Lucas*, 275 F.3d at 769 (upholding imposition of sanctions
5    pursuant to the Federal Rules of Civil Procedure 16 and the local rules of the Central
6    District of California for counsel's unintentional noncompliance of a settlement
7    conference order); *Ayers*, 895 F.2d at 1270 (finding that district court acted within its
8    authority when it sanctioned counsel for failing to appear at a scheduled settlement
9    conference because "the date had 'slipped by him'"). If a court "sets a reasonable due
10   date, parties should not be allowed casually to flout it or painlessly to escape the
11   foreseeable consequences of noncompliance." *Mendez v. Banco Popular de Puerto*
12   *Rico*, 900 F.2d 4, 7 (1st Cir. 1990).

13       Accordingly, the Court finds that Defendant's failure to submit a timely
14   mediation statement supports the imposition of sanctions.

15            b.     Defendant and Ms. Badawi Failed to Participate in
16                   Settlement Discussions in Good Faith, Warranting Sanctions

17       Further, Defendant and Ms. Badawi argue that a court "cannot force a
18   settlement, sanction a party for refusing to make a settlement offer at all, or use
19   'pressure tactics' to coerce a settlement." [Dkt. No. 23 at 9.]

20       There is no dispute that a court may not force a party to settle. But the instant
21   inquiry is not whether the parties settled, or did not settle, *but procedurally* whether
22   Defendant and Ms. Badawi failed to participate in good faith during the Settlement
23   Conference.

24       A settlement conference in federal court involves a significant amount of time
25   and resources on behalf of the parties and the Court. As such, if a party intends not to
26   meaningfully participate, it has an obligation to inform the opposing party and the
27   Court. A settlement conference is not intended to be a futile exercise. Or, as one court
28   cogently summed up, "if a party has no intention of settling, and therefore cannot

1  participate in settlement discussions in good faith, they have an obligation to inform
2  the Court as soon as practically possible." *Hansen v. State Farm Mut. Auto. Co.*, 2013
3  WL 1385639, at *1 (D. Nev. Apr. 3, 2013).
4       Here, as Ms. Badawi admitted, neither she nor Defendant communicated that
5  Defendant was unwilling to settle for anything other than a waiver of costs prior to the
6  Settlement Conference.  [*See* Dkt. No. 21 at 5-6, 7-8.]  Such failure to notify either the
7  opposing party or the Court before the scheduled Settlement Conference unnecessarily
8  expended "limited time, financial resources[,] and energies of the Court and Plaintiff,"
9  *Pitman*, 216 F.R.D. at 486-87, and hindered the possibility of preparing for and
10  conducting a "[m]eaningful and productive settlement conference[], [which is] vital to
11  the judicial process," *Painters Joint Comm. v. J.L. Wallco*, 2013 WL 3930485, at *3
12  (D. Nev. July 26, 2013) (citation omitted).
13       Another revealing indication that Defendant and Ms. Badawi attended the
14  Settlement Conference in less than good faith was Mr. Klee's later affirmation that,
15  regardless of the deficiencies and omissions in Defendant's mediation statement, "the
16  case [would] not . . . settle" under any circumstances.  [*See* Dkt. No. 44 at 44-45.]  Put
17  another way, Plaintiff, her counsel, and the Court were all there for naught, while
18  Defendant and Ms. Badawi engaged in a pretense (and, thus unsuprisingly, Defendant
19  and Ms. Badawi paid no heed in connection with the requirements of Defendant's
20  mediation statement, its timely submission, etc.).  [*See id.* at 49-50, 51-52 ("I don't
21  think there is much the Court could have done to accomplish a settlement under the
22  circumstances of this case . . . .").]
23       Accordingly, neither Defendant nor Ms. Badawi was prepared to participate in
24  good faith at the Settlement Conference, which warrants sanctions. *See Hansen*, 2013
25  WL 1385639, at *3 (sanctioning counsel who "could not have been prepared to
26  participate in good faith, because he knew his client would not settle the case before
27  the settlement conference even began").
28

13

1              c.     Misrepresentations Regarding Ms. Badawi's Dilatory Arrival

2                  Warrant Sanctions

3        Finally, Ms. Badawi argues that she should not be sanctioned for arriving "5 to

4 10 minutes late" to the Settlement Conference. [Dkt. No. 23 at 10.]

5        As the Court already emphasized, Ms. Badawi's tardiness is the "least

6 important" factor in the Court's imposition of sanctions. [*See* Dkt. No. 44 at 35-36.]

7 However, Ms. Badawi's repeated, self-serving, and *false* testimony that she arrived

8 only five to ten minutes late, [*see* Dkt. No. 23 at 2, 5; Dkt. No. 23-1 at 5, 6, 20] —

9 which was contradicted by the start time of the transcript, Plaintiff's counsel's

10 observation, and ultimately by video surveillance provided by the United States

11 Marshals Office, [*see* Dkt. No. 44 at 38] — is unbecoming of an officer of the court.

12 To be clear, it is not Ms. Badawi's late arrival per se, but rather the subsequent

13 misrepresentations regarding her late arrival, that cause the Court concern and

14 discomfort. Whether purposeful or merely negligent, this factor likewise supports the

15 imposition of sanctions.

16              d.     Defendant and Ms. Badawi's Conduct as a Whole Warrants

17                  Sanctions

18        During the OSC Hearing, the Court noted its strong reluctance in censuring any

19 party or his, her, or its counsel. Albeit, in light of Defendant and Ms. Badawi's: (1)

20 failure to comply with the Settlement Order; (2) failure to participate in settlement

21 discussions in good faith; and (3) at best, unsatisfactory explanations that are

22 inconsistent with the facts,[4] the Court is forced to take corrective action here. *See*

23 *Dunaway v. Estate of Aiken*, 2011 WL 6211228, at *2 (S.D. Ind. Dec. 14, 2011)

24 ("[P]arties who attend settlement conferences owe it to each other and the court to take

25 these conferences seriously.").

26

27 _____

28 [4]     This includes the spurious explanation, (*see* Section III.E., *infra*), for why Defendant failed to remit attorneys' fees, as ordered by the Court on September 30, 2016, [Dkt. No. 24].

1    In fact, in light of the multiple violations, evasive responses, and disingenuous

2    explanations proffered at the OSC Hearing and contained in Defendant and Ms.

3    Badawi's written submissions, the Court contemplated alternative or additional

4    sanctions (*i.e.*, increasing the sanctions amount, or referring the matter to the State Bar

5    of California). However, in the exercise of clemency, the Court elects to impose only

6    monetary sanctions, and in an amount less than originally contemplated. The Court

7    genuinely hopes that, as a result, Defendant and Ms. Badawi will uphold the highest

8    standards of candor and integrity moving forward, and follow the letter, and spirit of,

9    the Court's orders.

10    **B.    Attorneys' Fees and Costs**

11    Defendant and Ms. Badawi argue that Plaintiff's counsel should not be awarded

12    a reimbursement of $12,500 in attorneys' fees and costs incurred in preparing for and

13    attending the Settlement Conference because: (1) it is unfair to award such fees and

14    costs in preparation for a court-ordered settlement conference; (2) the number of hours

15    claimed by Plaintiff's counsel are "excessive and unreasonable"; (3) Plaintiff's counsel

16    did not provide an explanation as to why it took two experienced lawyers to prepare a

17    mediation statement and attend the Settlement Conference; and (4) the amount of time

18    Plaintiff's counsel collectively spent traveling to and from, and attending, the

19    Settlement Conference was "excessive and unreasonable." [Dkt. No. 36 at 5-7.]

20    **1.    Legal Standard**

21    District courts in this circuit generally have broad discretion in determining the

22    reasonableness of fees. *See Gates v. Deukmejian*, 987 F.2d 1392, 1398 (9th Cir. 1992).

23    "[I]n most cases, the lodestar figure is presumptively a reasonable fee award[.]"

24    *Camacho v. Bridgeport Financial, Inc.*, 523 F.3d 973, 978 (9th Cir. 2008). As a rule,

25    the lodestar amount is calculated "by taking the number of hours reasonably expended

26    on the litigation and multiplying it by a reasonable hourly rate." *Fischer v. SJB-P.B.*,

27    214 F.3d 1115, 1119 (9th Cir. 2000) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433

28    (1983)).

1       After a lodestar is calculated, the court may "enhance or reduce the lodestar

2   figure based on an evaluation of the *Kerr* factors that are not already subsumed in the

3   initial lodestar calculation." *Id.* (citations omitted); *see also Stetson v. Grissom*, 821

4   F.3d 1157, 1166-67 (9th Cir. 2016) (discussing the lodestar method and *Kerr* factors in

5   calculating attorneys' fees).  These factors include: (1) the time and labor required; (2)

6   the novelty and difficulty of the questions involved; (3) the skill requisite to perform

7   the legal service properly; (4) the preclusion of other employment by the attorney due

8   to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or

9   contingent; (7) time limitations imposed by the client or the circumstances; (8) the

10  amount involved and the results obtained; (9) the experience, reputation, and ability of

11  the attorneys; (10) the undesirability of the case[5]; (11) the nature and length of the

12  professional relationship with the client; and (12) awards in similar cases.  *Kerr v.*

13  *Screen Extra Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975), *cert. denied*, 425 U.S. 951

14  (1976), *abrogated on other grounds by City of Burlington v. Dague*, 505 U.S. 557

15  (1992).  "Among the subsumed factors presumably taken into account in either the

16  reasonable hours component or the reasonable rate component of the lodestar

17  calculation are: '(1) the novelty and complexity of the issues, (2) the special skill and

18  experience of counsel, (3) the quality of representation, . . . [and] (4) the results

19  obtained[.]'"  *Morales v. City of San Rafael*, 96 F.3d 359, 364 (9th Cir. 1996), *opinion*

20  *amended on denial of reh'g*, 108 F.3d 981 (9th Cir. 1997).

21      **2.**    **Analysis**

22      a.    <u>Lodestar Calculation</u>

23      During the Settlement Conference, the Court inquired of Plaintiff's counsel:

24  (1) the number of hours they spent preparing for, traveling to and from, and attending

25  the Settlement Conference; and (2) their customary hourly rate of $500.  [Dkt. No. 21

---

[5]      The United States Supreme Court has cast some doubt as to the relevance of this factor in
calculating attorneys' fees.  *See City of Burlington v. Dague*, 505 U.S. 557, 561-64 (1992); *see also*
*Davis v. City & Cty. of San Francisco*, 976 F.2d 1536, 1546 n. 4 (9th Cir.1992), *vacated in part on*
*other grounds*, 984 F.2d 345 (9th Cir.1993).

1  at 17.]  Plaintiff's counsel estimated that they collectively spent approximately 25

2  hours in preparing for the Settlement Conference, and a total of 32 or 33 hours when

3  taking into account travel time. [Dkt. No. 21 at 16-19.]  Then, the Court considered

4  each of Plaintiff's counsel's years of experience, as well as the latest report regarding

5  the hourly rates of comparable lawyers in the community for similar services, and

6  determined that a $500 hourly rate "is reasonable in a bad-faith insurance claim

7  currently pending in the United States District Court[.]"  [*See id.* at 16-17]; *see also*

8  *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984) ("[T]he critical inquiry in determining

9  reasonableness is now generally recognized as the appropriate hourly rate[,] [a]nd the

10  rates charged in private representations may afford relevant comparisons.").  Thus,

11  taking all of the aforementioned factors into account, the Court was inclined to award a

12  reimbursement of $15,000 in attorneys' fees and costs to Plaintiff's counsel. [Dkt. No.

13  21 at 16-20.]

14      However, after affording Defendant and Ms. Badawi an ample opportunity to

15  challenge the reasonableness of the hours and hourly rate claimed, as well as Plaintiff's

16  counsel to respond, the Court reduced the award to $12,500. [*Id.* at 26.]  Despite this

17  reduction, Defendant failed to remit payment. [Dkt. No. 44 at 28.]  In response to the

18  Court's inquiries as to why payment had not yet been made, Mr. Klee disingenuously

19  argued that there was no deadline to remit payment, even though the Court had

20  previously confirmed with Ms. Badawi that fourteen days was sufficient time to

21  reimburse Plaintiff's counsel. [Dkt. No. 44 at 30; *see* Dkt. No. 21 at 34-35.]

22      Pursuant to the Court's order on November 3, 2016, Plaintiff's counsel

23  submitted declarations, discussing the reasonableness of their hours. [Dkt. No. 33.]

24  After review of the declarations provided, Defendant's response, and supporting case

25  law regarding the prevailing market rate, the Court maintains that a $500 hourly rate is

26  reasonable for the reasons given at the Settlement Conference. *See, e.g., Whealen v.*

27  *Hartford Life & Acc. Ins. Co.*, 2009 WL 4063166, at *6 (C.D. Cal. Nov. 20, 2009)

28  (finding hourly rate of $550 to be reasonable for an attorney in an ERISA action to

1  recover unpaid disability benefits); *Browne v. Am. Honda Motor Co., Inc.*, 2010 WL

2  9499073, at *7 (C.D. Cal. Oct. 5, 2010) (finding hourly rate of $550 to be reasonable

3  for an attorney of over twenty years of experience who had worked on several large

4  class action cases).  Also, while the Court was perhaps too thrifty in its earlier

5  calculation of the number of hours expended by Plaintiff's counsel for preparing and

6  attending the Settlement Conference, and in hindsight Plaintiff's counsel surely

7  devoted more time to the matter than 25 hours, on balance, the Court elects to stay true

8  to its original determination.  *See Kerr*, 526 F.2d at 70; *Morales*, 96 F.3d at 364.

9         Accordingly, the Court calculates the appropriate amount of attorneys' fees to be

10  $12,500, based on: (1) Plaintiff's counsel's reasonably expending 25 hours to prepare

11  for and attend the Settlement Conference; and (2) an hourly rate of $500.

## IV.

## CONCLUSION

For the foregoing reasons, the Court hereby ORDERS the following:

1.    Defendant shall pay attorneys' fees in the amount of $12,500.00 to
Plaintiff's counsel **no later than January 10, 2017**;

2.    Defendant shall pay sanctions in the amount of $500.00 to the
Clerk of Court **no later than January 10, 2017**; and

3.    Ms. Badawi shall pay sanctions in the amount of $950.00 to the
Clerk of the Court **no later than January 10, 2017**.


*It is so ordered.*


DATED:      December 20, 2016

_____
Hon. Jay C. Gandhi
United States Magistrate Judge